Please rise. This court is now in session. Please be seated. Ms. Taylor, can you call the next case, please? Case number 315-0114. People of the State of Illinois, I believe by Richard Leonard v. James Robinson, Jr., a college by county favor. Ms. Taylor? Good afternoon, Your Honors. May it please the Court, Mr. Leonard? I am Kelly Taylor with the Office of the State Appellate Defender on behalf of the defendant, James Robinson, Jr. Mr. Robinson was convicted of three counts of predatory criminal sexual assault of a child and one count of aggravated criminal sexual abuse following a jury trial. There are four issues in this case. First, there was a reasonable doubt issue. Today, though, I will be focusing on issues 2 and 3, which are both new trial issues. The first issue involves a number of mistakes at trial resulting in cumulative error and prejudice to the defendant. The second issue is that the complainant's testimony failed to allow for cross-examination within the computation clause, which failed to establish two of the counts the defendant was charged with. The final issue is that the sentence was excessive, and of course I am prepared to answer questions on any of the four issues. Mr. Robinson respectfully requests that this Court reverse his conviction outright, and if this Court elects not to reverse his conviction outright, he requests that this Court reverse his conviction and remand for a new trial. And in the alternative, Mr. Robinson asks that this Court reduce his sentence. As discussed in the reasonable doubt issue, this was a closed case. There was no physical evidence and there was no eyewitnesses. This entire case hinged on the credibility of the complainant, S.T. Any mistake at trial could have shifted the balance in this case, and there were several mistakes made here. First, the Court erred in finding that Robinson opened the door to admission of his 2005 drug conviction. Prior to trial, the Court ruled that the 2005 conviction was highly prejudicial and should not have come in for impeachment purposes because there was already a 2000 aggravated criminal sex abuse conviction coming in for propensity purposes. The Court found that the alternating jury instructions would be too confusing and that the average layperson would not understand that this conviction here could be used for propensity to show that this person is likely to commit crimes versus this other 2005 drug conviction could only come in for impeachment purposes. The Court found that that would be too confusing to have the alternating instructions and that it would be too prejudicial for the 2005 drug conviction to come in. The Court said that Mr. Robinson could open the door to the conviction coming in if he made some kind of statement that he had not been in trouble since 2000. Now at trial, the Court found that Mr. Robinson opened the door to the 2005 conviction when he said he hid when the police came to arrest him because it was never good when the police came to his neighborhood. This statement in no way opened the door. It in no way implied that he had not been in trouble since 2000. Let me ask you, in regards to this issue, does it make any difference what the judge said in his pretrial order or is the issue whether it was irreversible error to allow this, you know, all those orders are interlocutory and so what he said the first time and whether it opened the door, is that really relevant or is the issue was allowing this conviction in regardless of what happened before, allowing this conviction in, was it reversible? I think we have to defer to the Court's original ruling here, especially because he didn't necessarily overrule it. He more so said that if the door was open that the conviction could come in. We review his judgments, not his reasoning. So I'm just wondering if the real issue here with regard to that evidence of the prior drug conviction for impeachment is whether anything that happened before he finally allowed it in is even relevant. Well, I think it's definitely relevant because he applied the Montgomery Standard and the judge found that it was highly prejudicial. And it is highly prejudicial. It is confusing for a jury to have to differentiate between those two jury instructions. And, I mean, there's already the 2000 case coming in. Adding additional felonies is only more and more prejudicial here to the defendant. And the Court's original ruling was fine and the state never argued that the original ruling was bad. The state merely said, oh, this statement opens the door. But that doesn't make sense because the statement that it's not good when the police come to the neighborhood, especially when you have a pending arrest warrant and the tactical team surrounds the house. That's never a good sign. So that in no way implies that he hasn't been in trouble since 2000. So adding in that second 2005 conviction is only prejudicial, only continues to pile on to the negative things that we find out about the defendant in this trial as pertains to the 2000 case. And it was prejudicial and it should have been left out. The Court should not have found that this statement opened the door and this 2005 conviction should never have come in. The Court next erred in allowing an evidence that a 13-year-old victim in an unrelated case, became pregnant and had an abortion. Obviously an abortion is a very sensitive subject. And the evidence of the 2000 conviction that defendant was convicted of aggravated criminal sexual abuse with a 13-year-old is certainly enough evidence for propensity in this case. There's no allegation in this case that there was a pregnant complainant. So allowing in this evidence of this pregnancy and this abortion is just over-the-top prejudicial and inflammatory and it should not have been allowed in. I guess I agree that it would have no relevance to hang it over the top, but do you think it's really any more prejudicial than the fact of the sexual assault itself? Oh, definitely. There are definitely people out there who think that abortion is the same as murder. Well, aren't there people out there who think sexual assault with children is the same as murder? I can't speak if people find murder and sexual assault to be the same, but certainly abortion piled on top of this already was, you know, it was irrelevant and it was inflammatory and it did nothing but have the jury hold it against the defendant that he put this 13-year-old in that position in 2000. Next, the court erred in failing to reopen the proofs from the 11510 hearing once the complainant in this case recanted her allegations. There was an extensive 11510 hearing conducted. Some of the hearsay statements were allowed to come in, and then two days before trial, ST said that Robinson didn't do it. She said she lied because of the way he had treated her mother. He cheated on her and caused fights in their marriage. So after the recant prior to trial, defense counsel requested that the court reopen the proofs to reexamine the hearsay statements made in light of ST's motive to fabricate. The motive to fabricate is one of the factors that's used to determine reliability of hearsay statements. The court refused. The court found that the statements were reliable when they were made, and he relied on People v. Monroe. Now, People v. Monroe is easily distinguishable because in Monroe, the trial victims testified at trial about the abuse that Monroe had inflicted. What they denied was they denied making the outcry statements from the 11510 hearing. In Monroe, the trial testimony convicted Monroe, unlike here where it was these hearsay statements from the victim-sensitive interview that essentially convicted defendant. One of the factors to be considered when determining reliability of hearsay statements is also whether the victim has recanted. If ST had recanted prior to the 11510 hearing, that most certainly would have been used as a factor in determining whether those hearsay statements were reliable. The fact that she recanted after the 11510 hearing is no less relevant, and the court really should have reexamined the statements in light of the new evidence, especially because the entire case hinged on the hearsay statements from the VSI, especially because there was a recantation in this case. And then, as if there were not enough trial errors, there was also prosecutorial misconduct during the rebuttal. The ASA said, you know what, yes, ST says it lasted for about an hour. I can't imagine if I were a 10-year-old little girl and this is happening to me, it probably felt like an hour. The court sustained an objection, and then the ASA said, if you're a 10-year-old little girl, it probably felt like an hour, it probably felt like a week, a month. The ASA persisted in an almost identical statement, which was improper, considering the court had just sustained the objection. And then the ASA did the same thing again, making a comment about some DNA evidence. She stated that surely defendant's DNA would have been all over the house because he lived there, and defense counsel objected because there was no evidence of that anywhere. And the ASA, the court sustained the objection, and the ASA restated the same objectionable argument. Mr. Robinson was prejudiced by the state's improper and inflammatory remarks on rebuttal, especially when there was no way, you know, you can't unring the bell, the jury heard it. In light of the closeness of this case, any one of these trial errors could have tipped the scale in favor of conviction. Viewed collectively, the errors deprived defendant of a fair trial. Not only was this a close case with a number of trial errors, but Mr. Robinson was convicted based on out-of-court accusations, which violated the Sixth Amendment right to confront his accuser. There were four counts charged in this case, and two of them were not brought up on direct testimony. On cross-examination, ST denied that Robinson did anything, and instead accused Sam, who was a boy from the neighborhood. Although ST did not testify to two of the elements on direct, the court allowed the state to introduce the testimonial hearsay statements made by ST through her videotaped interview, which implicated Mr. Robinson in two additional charges. Now, we are aware of this court's recent decision in People v. Dabney. Respectfully, we do disagree with this court's assessment of People v. Larn. Our Supreme Court in People v. Kitch had the opportunity to disagree with Larn's holding that the Rule 115.10 and the Confrontation Clause require the complainant to give accusatory testimony. Instead, our Supreme Court simply distinguished Larn on the facts.  Here, ST did not make herself available to defend or explain the prior statements. She did not make accusatory statements. She did not accuse Mr. Robinson. She instead denied that Mr. Robinson did anything, and instead accused Sam. And on direct, only two of the four charged elements were even mentioned. So Mr. Robinson was convicted of all four of the elements based on her videotaped hearsay statement that came in, and he had no opportunity to cross-examine on the two elements that were not introduced during direct testimony. ST was not sufficiently available under Kitch to be effectively cross-examined to defend or to explain the hearsay, and thus it should not have been admitted, especially when the language in Kitch said that the complainant's direct testimony standing alone was sufficient to convict. And that was, in Kitch, specified direct testimony. And in the alternative, this case can also be distinguished from People v. Dabney. Here, there was the recantation, and there was not a recantation in Dabney. Mr. Robinson respectfully requests that this Honorable Court reverse his conviction outright. If this Court elects not to reverse the conviction outright, Mr. Robinson requests that this Court reverse his conviction and remand for a new trial. In the alternative, Mr. Robinson requests that this Court reduce his sentence. Thank you. Thank you, Ms. Tanner. Mr. Hunter? May it please the Court, Counsel? Briefly, I would like to discuss the evidence because I respectfully disagree that the evidence here was closely balanced. The victim here made an outcry four days after the incident. She waited that long because the defendant was still in the house. When the defendant left the household, then she made the statement to her mother. And the core of her statements to the mother, to the ER doctor, to the nurse, and to the detective are so sufficient and overwhelming, despite the other inconsistent statements, which were very minor. The important evidence in this case is that the victim-sensitive interview, the victim told the interviewer that the defendant had taken off her clothes and that he had ripped her bra. He licked her private parts and tried to put his private parts into her private part and in her butt. The victim also said that the defendant had tried to use Vaseline that was on a nightstand. The victim made a statement to the defendant while he was molesting her, that, why are you doing this? Dads don't do this. And the defendant responded that some dads do. And then the defendant told the victim to shower after the offense. He told her that if he told anybody, he would kill her, her mother, and her baby sister. Now all of that evidence is corroborated by the testimony of the mother at trial. It's corroborated by the ER doctor, Dr. Marino, and Tracy Fredwell, the ER nurse and Officer Lieberman. Now this is a 10-year-old child who just went through a traumatic experience. Certainly you can expect some minor inconsistencies, but the core of that evidence was not only overwhelming evidence, it was corroborated. The doctor didn't corroborate it, did he? He corroborated some of the evidence. He said there wasn't anything there. He said it could have healed in three days, but there was nothing there. Right, the doctor's corroborating evidence was, the victim had told the doctor that she was sexually assaulted. She told the doctor that some daddies do this, what the defendant had said to her, and that he also corroborated the fact that the defendant threatened to kill her and her family if she told anybody. What do you do when you're dealing with a victim who says that she lied? Yes, I have to get to that recantation testimony. She did say, understand, that it never happened, but you have to look at the whole record in its context. The mother had a dysfunctional relationship with this defendant. Even though the defendant and her were married, the defendant, in front of the mother and his wife, would go out with his other girlfriends. And the mother had some dysfunctional attachment to this defendant, and she did not want him to spend the rest of his life in jail. She wanted him back with his family. The victim was not only victimized once by the defendant, but the second time by the mother. The inference from the record is that the mother manipulated the daughter, the victim here,  I cited my brief to an episode when the prosecutor was trying to go over the victim's testimony prior to trial, and they were in the jury room along with the two other state's attorneys. And the mother, the victim said that she did not want to go over her testimony, and she said that the defendant didn't do it. However, before that, she put her head down, she was very somber, and she looked up at the mother, and then she looked down again, and she said in a very quiet voice, he didn't do it. This strongly suggests that the mother was manipulating the victim here. Or that the victim was finally telling the truth. But it's so inconsistent with what she told the people four days after the assault happened. Just for purposes of argument here. Yes. The dysfunctional relationship between the father and the mother actually supports what the girl said was her reason for making up the story. That was her reason, yes. So the fact that there was a dysfunctional relationship does not disprove her statement that she made it up. It does not disprove it, no. But recantation testimony is inherently reliable, and this court shouldn't reverse a conviction based on recantation testimony except in extraordinary circumstances. Your position is that recantation is never truthful. No, that's the law. As I said in my brief, the case law, recantation testimony is unreliable, and it should not be reversed unless there are extraordinary circumstances. I didn't write down the case that I cited, but it's in my brief. But the case you cited in your brief, was that a case where somebody came in at trial one and testified to A and then came back later and tried to testify in a second trial, a motion for a second trial to what I said in trial A, recanting what I said under oath as opposed to this? Legally, is a recantation of saying something different than what you said outside of court, is that the type of recantation that these cases are talking about? This is just the general black letter law that recantation testimony is highly unreliable. I don't recall the facts of the case that I cited right now. I'm drawing a blank. But it's the general law that recantation testimony is unreliable, and it should not be reversed unless there are extraordinary circumstances. So I believe it would apply either way if you testified to something at the first trial and then you come back and you recant your testimony. Either way, I think both situations apply in that case and in this case. So why would this young girl make up this story close to the event that happened four days later and then a month or two she would give her statement at the VSI and then several years later when she's ready for trial, she would recant her testimony. If you look at the record, I believe you can draw the inference here that her recantation testimony was not reliable. Let me give you another example. At trial, the victim was caught in a lie. The assistant state's attorney asked the victim about a conversation that was had between the victim, the defendant, and the mother, and the victim was present. They were talking about getting the victim's ears pierced a second time. And the prosecutor asked the victim, that was right after James had did this to you, right? The victim responded, oh, my gosh, yes, considering the victim's lack of cooperation with the prosecution and this statement that she caught her in a lie at trial. The recantation testimony here seems to be a fabrication and what's more believable is what her outcry was a year or so earlier. These cases are all sui generis, right? No, they're not. They're not? Sexual assault cases are not sui generis. Termination cases would be an example of sui generis, but sexual assault cases are just as relevant as other criminal cases where they're not sui generis and you can compare facts from one to the other without any problems. Now that I've covered the evidence and why we should not believe the victim's recantation because of her lying in court, I'll address the defendant's arguments. Thank you. Counsel has two minutes. Regarding the heirs, the four heirs that defense counsel raises, all but one of them were forfeited. They were not preserved in a post-trial motion and because I argue that the evidence was not closely balanced, you should not consider these three arguments under the plain heir rule. The only one that was preserved was that the trial judge abused his discretion when he opened the door to the defendant's 2005 conviction. The defendant testified at trial that in my neighborhood when the police come around, don't mean nothing good. The trial judge found that this was a comment on the defendant's prior criminal activity and that every time the police come around, he's arrested for something. You should consider this as whether the trial judge abused his discretion in determining whether the defendant opened the door by his testimony. The defendant put his credibility at issue by testifying. In this case, the trial judge correctly found that the defendant opened the door to this testimony, of course. Let me ask you something here. At the end of the day, would it be fair to say that this trial, it was up to the jury to decide whether the victim was lying when she, originally, or whether she was lying on the stand. Yes, it's the jury's determination to determine the credibility of the witnesses and the weight to give to those testimonies. But, so, and that's, in essence, the evidence that he did it. Early on, she said he did it, and she gets on there, and she worked out two full proofs, yep, didn't do it. Right. So, how does it get more closely balanced than that? Could you repeat this? How does it get more closely balanced than that? In other words, you're saying this is, you told six people that, you know, outside the court, you told... It's not closely balanced because the core evidence that she stated was corroborated by four other witnesses. The recantation was not... The only thing they corroborated was that she said it, so now you've got the interstate times four times, but there's no other corroboration as far as physical evidence or finding any evidence in the house or something that would say that this guy actually did this. So the corroboration is, yeah, I told four people this at this time, and is that really corroboration? I mean, if you tell a lie five times, is that corroborated? I mean, assuming you're not in politics? I see your point, but I believe that you have to look at the record as a whole, and the defendant's, the victim's earlier statements seem to be more credible than her recantation because of the points I just pointed out. Well, and apparently the jury agreed with you, but that still leaves me with a question of whether this is a closely balanced case or not. Yes. Well, I believe that it's not. It's closely balanced because of the core evidence and the recantation was inferred to be a lie by her caught in lying at trial. I guess the standard of review here would perhaps be helpful, whether any rational trier of fact could have found the essential elements of the crime after viewing the evidence in the light most favorable to the people. So if you take that standard of review, you need to give the evidence slightly more weight, perhaps, than what the defendant's argument is, since the standard of review is such. If there's no questions, I'd ask that you affirm the defendant's convictions and sentence. Thank you very much, Mr. Leonard and Ms. Jenner. Yes. To the state's point about recantation being inherently unreliable, well, whether a victim has recanted is used as one of the factors in determining whether these out-of-court hearsay statements are reliable or not. So obviously, recantations are found to be useful in some cases, especially when trying to determine that these statements are reliable. Also, I discussed plein air in the brief. We would argue that it is closely balanced. As Justice Schmidt talked about, I mean, there is no physical evidence, eyewitnesses. I would agree that repeating what ST told them at the hospital is not corroborating evidence. It's just repeating the story that she told, and that, as Justice McDade was discussing, every instance that the state mentions that could be evidence that the mom was influencing her to try to get defendant to have him come home could be flipped the same way to say that the mom was trying to please the mom by making up this story about Mr. Robinson as a sort of revenge for the horrible philandering and flaunting the relationship with the other girlfriends in front of her. Her being quiet and looking down, I mean, these are all evidence also of a guilty conscience or realizing that this has gone very far. They're heading into a trial, and it's no longer funny when somebody's life and freedom is essentially on the line. So these instances of, well, her story wasn't, her original story was true because she was looking at the mom for confirmation. Well, she might have just also been looking guilty or concerned that this had gone on as long as it had. And again, we would just argue that the plein air prong definitely applies because it is closely balanced. And we would request that this court reverse Mr. Robinson's conviction outright, and if reversal outright is not what this court elects to do, then we ask that this court reverse the conviction and remand for a new trial. And in the alternative, Mr. Robinson requests that this court reduce his sentence. Thank you. Thank you, Ms. Taylor. Thank you both for your arguments. We will take this matter under advisement of the bachelor of the written discipline. We will now take a short recess. Please rise. This court stands recessed.